UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN D. DARER, 4STRUCTURES.COM, LLC d/b/a SUMMIT SETTLEMENT SERVICES,<br><br>Plaintiffs,<br><br>v.<br><br>MARY WROBLESKI and LING WANG,<br><br>Defendants. | : CASE NO. 302 CV 1751 (MRK)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: DECEMBER 14, 2004 |

**DEFENDANT WROBLESKI'S BRIEF REGARDING EXHIBITS**

Defendant Mary Wrobleski respectfully submits this brief (1) in support of her objection to the Plaintiffs' attempt to utilize at trial portions of her personnel files from her former employers, including performance evaluations; and (2) in opposition to the Plaintiffs' attempt to preclude Ms. Wrobleski from utilizing evidence of the Plaintiffs' settlement tactics.

I.   Ms. Wrobleski's Personnel Files from her Former Employers Should Not Be Admitted.

Ms. Wrobleski respectfully objects to the Plaintiffs' attempt to use as exhibits excerpts from the personnel files of her former employers. These exhibits consist of portions of the personnel file maintained from four of Ms. Wrobleski's former employers, primarily consisting of performance evaluations. Upon information and belief, the Plaintiffs seek to rely upon these records to show Ms. Wrobleski's alleged incompetence, and also somehow to show that Ms. Wrobleski misrepresented her work history and professional experience.

Ms. Wrobleski does not dispute that information verifying her employment history and the job titles she held at her former employers is relevant to the plaintiffs' misrepresentation claims, as pled.[1] Nonetheless, the performance evaluations Ms. Wrobleski received at those jobs

---

[1] Factually, any information regarding Ms. Wrobleski's credentials is irrelevant to the
(continued...)

are irrelevant and unduly prejudicial.

      The Plaintiffs cannot rely upon Ms. Wrobleski's former job performance evaluations to allegedly show that she is incompetent, because they have not and cannot now raise that issue with the Court.  Any claim that Ms. Wrobleski' breached the standard of care required of a computer consultant or software developer would require expert testimony that the Plaintiffs do not offer.  Indeed, the Plaintiffs do not even plead a negligence claim that would have required such testimony.  Ms. Wrobleski's job performance is irrelevant to the claims of misrepresentation of her credentials, as there is no allegation that Ms. Wrobleski ever represented to the Plaintiffs the reasons why her former employment was terminated with any of her former jobs.  In addition, exploring Ms. Wrobleski's former employers and the reasons why she left such jobs will require the litigation of a litany of issues irrelevant to the Plaintiffs' claims.  If Ms. Wrobleski is required to defend herself and explain why her employment was terminated with several prior employers, the Court will be forced to hear substantial evidence regarding each such job, Ms. Wrobleski's recollections and contentions regarding her performance at such jobs, and all related issues.  Especially in light of the fact that the Plaintiffs seek to introduce such record for four former employers, the trial of this matter will take a lengthy detour into matters wholly unrelated to the Plaintiffs claims.

      The transparent goal of the Plaintiffs is to disparage Ms. Wrobleski's competency by citing to criticisms she received at former employers.  Ms. Wrobleski obviously disputes the Plaintiffs' allegations in this regard, but respectfully asserts that evidence regarding her former employer's view of her work performance are irrelevant, unduly prejudicial and should be precluded.

---

[1](...continued)
Plaintiffs claims, as set forth in Ms. Wrobleski's proposed findings of fact and conclusions of law, because the Plaintiffs never relied upon Ms. Wrobleski's representations regarding her credentials.  To the contrary, the Plaintiffs retained Ms. Wrobleski because of her long-standing devoted friendship with plaintiff John Darer.

2

II.    <u>Evidence of the Plaintiffs' Settlement Communications and Conduct Should be Admitted.</u>

The Plaintiffs object to the admissibility of correspondence between counsel expressing the Plaintiffs' settlement demands pursuant to Rule 408 of the Federal Rules of Evidence. In so objecting, the Plaintiffs ignore the text of Rule 408 and the rationale as to why Ms. Wrobleski offers this evidence. Ms. Wrobleski's CUTPA counterclaim is premised upon the Plaintiffs improper use of litigation as an anti-competitive business tactic. This lawsuit marks the <u>fourth</u> time that the Plaintiffs have commenced suit against those involved in the development of its website. These litigations have been pursued for the improper purpose of stifling competition and precluding numerous software developers (including the companies Fresh Baked Studios and Sybits, and the individuals Greg Bush, Ling Wang, and Mary Wrobleski) from developing products for the structured settlement industry. Although asserting various claims against these software developers, the Plaintiffs have maintained the consistent strategy of seeking agreements that restrict software engineers from developing products that might compete with the Plaintiffs and their website in the structured settlement industry.

Rule 408 restricts the use of settlement information only when such evidence is offered "to prove liability for or invalidity of the claim or its amount." The rule explicitly provides that it "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations .... [and therefore] does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay or proving an effort to obstruct a criminal investigation or prosecution."

In each of the Plaintiffs' numerous settlement demands made upon Ms. Wrobleski and her former co-defendant Dr. Ling Wang, they have consistently insisted that no settlement could occur without Ms. Wrobleski and Dr. Wang (1) agreeing to a highly restrictive agreement concerning the scope of their alleged trade secrets (which in fact are far from secret or

3

proprietary), and (2) agreeing to a lengthy covenant not to compete or otherwise even work in the structured settlement industry. Dr. Wang ultimately could not afford the high costs of litigation and, after terminating his relationship with his attorney, he conceded that he would sign an agreement containing, among other things, a two-year non-compete. Coupled with the practical consequence that the pendency of this lawsuit precluded Dr. Wang from following through with his previously announced intention to develop software for the structured settlement industry, the Plaintiffs have achieved the extraordinary and unscrupulous result of barring Dr. Wang from developing competing software from September 2002 through December 2006 – a period of more than four years.

Notably, a non-compete agreement and an overly broad agreement concerning the scope of the Plaintiffs' intellectual property are two things the Plaintiffs could not possibly have achieved if they had pursued their litigation against Dr. Wang to judgment. The Wang settlement is not unique, but rather is evidence of the Plaintiffs' persistent, repeated strategy of neutralizing potential competitors. The Plaintiffs pursued Fresh Baked Studios until the company no longer was in business. They pursued Gregory Bush, spending approximately $23,000 in legal fees for a $4,000 settlement and a highly restrictive agreement concerning the scope of their intellectual property. And, they pursued Sybits until Sybits also agreed upon an unduly restrictive agreement concerning their intellectual property <u>and</u> a twenty-eight (28) month non-compete agreement, because, like Ms. Wrobleski and Dr. Wang, Sybits also had announced an intention to develop other software for the structured settlement industry.

The Plaintiffs' CUTPA claim is premised upon this pattern of unfair, improper and unscrupulous competitive practice. Indeed, the Plaintiffs' initial motivation that gave rise to the instant litigation was Dr. Wang's and Ms. Wrobleski's refusal to sign a non-compete agreement that was demanded after the two had been working for the Plaintiffs for months. Only after Dr. Wang and Ms. Wrobleski refused to sign a lengthy non-compete did the Plaintiffs develop retroactive discontent with their services, terminate them, and refuse to pay them for months of

prior work.

When viewed in the context of this CUTPA claim, evidence concerning the prior settlements in the Plaintiffs' other litigations, evidence of Dr. Wang's recent settlement with the Plaintiffs, and evidence of the Plaintiffs' repeated settlement demands to Ms. Wrobleski must be admitted.  Rule 408 simply does not preclude settlement details in order to prove that a plaintiff is operating with an improper motive.  See Pace v. Paris Maintenance Co., 7 Fed. Appx. 94, 97, 2001 WL 327102 at * 2 (2d Cir. Apr. 3, 2001); see also Resolution Trust Corp. v. Blasdell, 154 F.R.D. 675, 681 (D. Az. 1993) (holding that Rule 408 does not render as inadmissible settlement evidence offered, not to prove liability, but rather to reveal to the court what a party believes to be the plaintiff's improper motive for filing the action).

As the Sixth Circuit explained in Unorma/Shelby Business Forms, Inc., 111 F.3d 1284, 1294 (6th Cir. 1997):

> Rule 408 is inapplicable when the claim is based upon some wrong that was committed in the course of settlement discussions; e.g., libel, assault, breach of contract, *unfair labor practice*, and the like .... Rule 408 does not prevent the plaintiff from proving his case; wrongful acts are not shielded because they took place during compromise negotiations.

113 F.3d at 1294 (emphasis in original) (quoting 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5314 (1st ed. 1980)).  As the Court further explained,

> The inapplicability of Rule 408 to suits seeking to vindicate wrongs committed during settlement discussions derives from the more general principle that Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.  Evidence of the compromise of a claim different than the claim currently in dispute therefore is admissible unless the compromise evidence requires an inference as to the offeror's belief concerning the validity or invalidity of the compromised claim.

113 F.3d at 1294-95 (internal quotation marks and citations omitted).  Thus, as here, when settlement communications are offered not for purposes relating to the validity of the Plaintiffs'

claims, but rather for purposes of supporting a separate counterclaim, such communications are admissible.

Thus, in Lo Bosco v. Kure Engineering Ltd, 891 F. Supp. 1035 (D. N.J. 1995), the court held that settlement evidence was admissible at trial for purposes other than as admissions of liability or the lack of validity of plaintiff's claim. 891 F. Supp. at 1040. Affirming this part of a magistrate judge's recommended ruling that he found "to be entirely sound," Judge Wolin agreed with the magistrate judge's conclusion that settlement discussion evidence was admissible as communications relevant to the state of mind of the plaintiff and, therefore, admissible to prove bias, prejudice or state of mind. 891 F. Supp. at 1039. Similarly, in Ausherman v. Bank of America Corp., 212 F. Supp. 2d 435, 455 (D. Md. 2002), the court rejected an argument that communications concerning settlement were inadmissible for any procedural or substantive purpose. The court explained the limitations on Rule 408 with a colorful example:

> [A] common sense example further underscores the fallacy in Mr. Sweetland's logic. If he were correct, then the lawyer for the defendant in a sexual harassment case could include with complete impunity as a last sentence in a written settlement offer the statement that "This offer represents the defendant's final offer, and, if it is not accepted, then the defendant will be shot immediately." To suggest that this result would be condoned by Evid. Rule 408 is absurd.

212 F. Supp.2d at 455. Thus, the court concluded:

> For those who see within Evid. Rule 408 the reflection of their own ingenuity at having discovered a means to lie, threaten, or coerce with impunity to negotiate a settlement advantageous to their clients, the sanctuary they perceive is illusory. The rule itself on its face and interpreted as it must be – under Evid. Rule. 102 to obtain a fair and just result – allows no such use. Nor will the courts allow a rule intended to promote the fair resolution of disputes to be perverted by a use that would undermine the very reason for it existence.

Id.[2]

---

[2] The Court cited additional support for exceptions to Rule 408. See Bankcard America, Inc. v. Universal Bancard Systems, Inc., 203 F.3d 477, 484 (7th Cir.), cert. denied, 531 U.S. 877
(continued...)

In the present context, Ms. Wrobleski's CUTPA claim is premised largely on the Plaintiffs' settlement conduct. The Plaintiffs have not and could not utilize only the litigation process as a means of accomplishing their goals, as they could not obtain either non-compete agreements or the unduly broad trade secret protections through litigation to judgment. Rather, their strategy has been to utilize the litigation process to coerce settlements that restrict potential competitors from developing products for the structured settlement industry. To date, their tactics have been successful with Fresh Baked Studios, Greg Bush, Sybits and Dr. Wang. Only Ms. Wrobleski has steadfastly refused to be bullied, and at trial she will prove significant costs she has incurred in order to preserve her right to develop software for or become employed in the structured settlement industry. In order to support that claim, however, it will be necessary for Ms. Wrobleski to rely upon evidence of the Plaintiffs' tortious, unfair trade practices. Therefore, she respectfully asserts that the evidence she intends to offer concerning the Plaintiffs' litigation and settlement tactics be admitted.

                    THE DEFENDANT,
                    MARY WROBLESKI


                    By_____
                    Daniel M. Young (ct17188)
                    WOFSEY, ROSEN, KWESKIN
                        & KURIANSKY, LLP
                    600 Summer Street
                    Stamford, Connecticut 06901
                    Telephone: (203) 327-2300
                    Facsimile: (203) 967-9273
                    E-mail: dyoung@wrkk.com

---

[2](...continued)
(2002) ("Rule 408 is not an absolute ban on all evidence regarding settlement negotiations. The rule permits evidence that is otherwise discoverable or that is offered for a purpose other than establishing liability."); Freidus v. First Nat'l Bank, 928 F.2d 793 (8th Cir. 1991) (for rebuttal); County of Hennepin v. AFG Indus., Inc., 726 F.2d 149, 153 (8th Cir. 1984) (for impeachment); United States v. Hauert, 40 F.3d 197, 199-200 (7th Cir. 1994) (to show defendant's knowledge and intent), cert. denied, 514 U.S. 1095 (1995); Johnson v. Hugo's Skateway, 949 F.2d 1338, 1342, 1346 (to show intent or motive), on reheating 974 F.2d 1408 (4th Cir. 1992); Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1362-66 (10th Cir. 1987) (to show a course of reckless conduct).

**CERTIFICATION**

      This is to certify that a copy of the foregoing has been mailed this 15th day of December 2004 to:

    Alberto Moris, Esq.
    Hayden Brainard, Esq.
    Rucci, Burnham, Carta & Edelberg, LLP
    30 Old Kings Highway South
    Darien, CT   06820

                                              _____
                                              Daniel M. Young