UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN D. DARER and 4STRUCTURES.COM,
LLC d/b/a Summit Settlement Services,
Plaintiffs

CIVIL ACTION NO. 302 CV 1751 MRK

V.

MARY WROBLESKI,
Defendant
._____/

**PLAINTIFFS' AMENDED PROPOSED CONCLUSIONS
OF LAW AND SUPPLEMENTAL BRIEF**

STATEMENT OF CONTESTED ISSUES OF LAW

I.  PLAINTIFFS' COMPLAINT

(1) COUNT I- Copyright Infringement

a) That Wrobleski's providing unauthorized access to Plaintiffs' Case Management System to Viren Patel constitutes a copyright infringement and thus a violation of 17 USC § 101 et. seq. See Stenograph, L.L.C. v. Bossard Assocs., 144 F.3d 96, 100, 101-02 (D.C. Cir. 1998) (following the line of cases holding that copying of software occurs when it is booted up and loaded into RAM); MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993) (upholding finding that "copying" for purposes of copyright law occurs when a computer program is transferred from a permanent storage device to a computer's RAM); Vault Corp. v. Quaid Software Ltd., 847 F.2d 255, 260 (5th Cir. 1988) ("the act of loading a program from a medium of storage into a computer's memory creates a copy of the program"); Bly v. Banbury Books, Inc., 638 F. Supp. 983, 986 (E.D. Pa. 1986) (plaintiff established copying of his work by showing that defendant placed a diskette containing copyrighted software in a computer, thus making a copy in the computer's memory); 2 Nimmer on Copyright, § 8.08 at 8-105

1

(1983) ("Inputting a computer program entails the preparation of a copy."); Final Report of the National Commission on the New Technological Uses of Copyrighted Works, at 13 (1978) ("the placement of a work into a computer is the preparation of a copy.").
A plaintiff seeking to establish copyright infringement must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); accord Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir.), cert. denied, 522 U.S. 908 (1997).

b) That Wrobleski's threat to sell or market Plaintiffs' Case Management System, including Plaintiffs' copyright protected code, in Wrobleski's possession entitles Plaintiffs to injunctive relief under 17 USC § 502 et. seq. to prevent infringement of such copyright.
17 U.S.C.A. § 502(a) (court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." (emphasis added); MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993) (despite absence of showing that defendant had loaned out plaintiff's software, court upheld grant of permanent injunction based on mere threat of violation); L.C. Page & Co. v. Fox Film Corp., 83 F.2d 196, 200 (2d Cir. 1936) ("Another remedy of a copyright owner or exclusive licensee is an injunction against threatened infringement . . . "); Harper Bros. v. Klaw, 232 F. 609, 611 (S.D.N.Y. 1916) (enjoining defendant from fulfilling threat to infringe copyright).

c) That Wrobleski's claim of ownership of Plaintiffs' Case Management System, including Plaintiffs' copyright protected code, constituted a copyright infringement entitling Plaintiffs to injunctive relief under 17 USC § 502 to prevent infringement of such copyright. Id.

(2)     COUNT II- Breach of Contract

    a)     That Wrobleski's having allowed a competitor of Plaintiffs, Viren Patel, unauthorized access to Plaintiffs' Case Management System constitutes a breach of her Consulting Agreement with Plaintiffs. Rosato v. Mascardo, 82 Conn. App. 396, 411, 844 A.2d 893 (2004) ("The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."); Bouchard v. Sundberg, 80 Conn. App. 180, 189, 834 A.2d 744 (2003) (same).

    b)     That Wrobleski's failure to return Plaintiffs' Case Management System to Plaintiffs constitutes a breach of her Consulting Agreement. Id.

    c)     That Wrobleski's claim of ownership of Plaintiffs' Case Management System constitutes a breach of her Consulting Agreement. Id.

    d)     That Wrobleski's threat to sell or market Plaintiffs' Case Management System constitutes a breach of her Consulting Agreement. Id.

    e)     That Wrobleski's intentional and unauthorized access to Plaintiffs' computer system (server) and disabling of Plaintiffs' website constitute a breach of her Consulting Agreement. Id.

  (3) COUNT III- Breach of Settlement Agreement

    a) That Wroblesk'si having allowed a competitor of Plaintiffs, Viren Patel, unauthorized access to Plaintiffs' Case Management System constitutes a breach of the Settlement Agreement entered into between Plaintiffs and Wrobleski.  Rosato v. Mascardo, 82 Conn. App. 396, 411, 844 A.2d 893 (2004) ("The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."); Bouchard v. Sundberg, 80 Conn. App. 180, 189, 834 A.2d 744 (2003) (same).

    b) That Wrobleski's claim of ownership constitutes a breach of the Settlement Agreement.  Id.

    c) That Wrobleski's threat to sell or market Plaintiffs' Case Management System constitutes a breach of the Settlement Agreement. Id.

  (4) COUNT IV- Dismissed by Agreement and Stipulation of the parties.

  (5) COUNT V- Computer Fraud and Abuse

    That Wrobleski's unauthorized access to Plaintiffs' Case Management System and the disabling of Plaintiffs' website constitute computer fraud and abuse and thus a violation of 18 U.S.C. § 1030(a)(5)(B).  See Register.com, Inc. v. Verio, 356 F.3d 393 (2d Cir. 2004) (discussing Computer Fraud and Abuse Act); EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577 (1st Cir. 2001) (competitor's use of "scraper" computer software program to glean prices from tour company's website "exceeded authorized access" within meaning of Computer Fraud and Abuse Act, where program's speed and efficiency depended on competitor's executive's breach of broad confidentiality agreement with company, his former employer; and where executive allegedly used his knowledge of company's proprietary codes to facilitate program's creation); Creative Computing v. Getloaded.com, LLC, 386 F.3d 930 (9th

Cir. 2004) (finding violation of Computer Fraud and Abuse Act based on defendant's having copied plaintiff's source code); Pacific Aerospace & Electronics, Inc. v. Taylor, 295 F. Supp. 2d 1188 (E.D. Wash. 2003) (Computer Fraud and Abuse Act authorized employer's use of Act's civil remedies to sue former employees and their new companies for seeking competitive edge through wrongful use of information from former employer's computer system); Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1126-27 (W.D. Wash. 2000) (employer engaged in self-storage business stated claim against competitor for alleged damage to its computers arising from competitor's alleged receipt from former employees of trade secret information obtained in violation of Computer Fraud and Abuse Act, despite claim that no damage occurred since information remained intact within computers; employer suffered loss in form of expenses incurred in modifying computers to preclude further data transfer.).

"[T]he term "damage" means any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).

"[T]he term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

"Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. . . ."  18 U.S.C. § 1030(g).

(6)    COUNT VI- Computer Fraud and Abuse

That Wrobleski's unauthorized access to Plaintiffs' Case Management System and the reckless disabling of Plaintiffs' website constitute computer fraud and abuse and thus a violation of 18 USC § 1030(a)(5)(B).  See legal authority cited above for Count V.

(7)    COUNT VII- Computer Related Offense (Connecticut General Statutes § 53a-251).

a)    That Wrobleski's providing unauthorized access to Plaintiffs' Case Management System to Viren Patel and disclosing private personal data constitute a violation of the statute.  See Conn. Gen. Stat. § 52-570b(c) (authorizing civil cause of action for violation of Conn. Gen. Stat. § 53a-251 and allowing for recovery of actual damages, treble damages where there has been a showing of willful and malicious conduct, and reasonable costs and reasonable attorney's fees); Blue Cross & Blue Shield of CT, Inc. v. Martino, 1991 WL 127094, at *5 (Conn. Super. July 2, 1991) (finding a violation of Conn. Gen. Stat. § 53a-251 and awarding attorney's fees, noting that pursuant to Section 52-570b(e), "the court shall award to any aggrieved person who prevails, reasonable costs and reasonable attorney's fees.").

b)    That Wrobleski's intentional and unauthorized access to Plaintiffs' Case Management System and the intentional or reckless disabling of Plaintiffs' website constitute a violation of the statute.  Id.

(8)   COUNT VIII- CUTSA

    a)   That the information disclosed to Viren Patel by Wrobleski constitutes a trade secret under CUTSA.

    Conn. Gen. Stat. § 35-51 (d) ("'[T]rade secret' means information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that:  (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.").

    "An alleged trade secret is not deprived of trade secret status simply because it is comprised of materials that are 'common [and] commercially available.'  Rather, a 'plaintiff's ability to combine these elements into a successful process, like the creation of a recipe from common cooking ingredients is a trade secret entitled to protection.'" Dreamcatcher Software Development, LLC v. Pop Warner Little Scholars, Inc., 298 F. Supp. 2d 276, 282 (D. Conn. 2004) (quoting Elm City Cheese Co. v. Federico, 251 Conn. 59, 74, 75, 752 A.2d 1037 (1999)).

    b)   That Wrobleski's having allowed a competitor of Plaintiffs, Viren Patel, unauthorized access to Plaintiffs' Case Management System constitutes a disclosure of a trade secret and thus a violation under CUTSA.  Conn. Gen. Stat. § 35-51(b) ("'Misappropriation' means: . . . (2) disclosure or use of a trade secret of another without express or implied consent by a person who . . . (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . ."); Elm City Cheese Co. v. Federico, 251 Conn. 59, 74, 90, 752 A.2d 1037 (1999)) (where accountant misappropriated trade secret and used information that he was duty bound to keep confidential, court found a trade secret violation).

      c)      That Wrobleski's providing Wang with unauthorized access to Plaintiffs' Case Management System constitutes a disclosure of a trade secret and thus a violation under CUTSA.  Id.

      d)      That Wrobleski's not returning the copy(ies) of the Case Management System to Plaintiffs after Plaintiffs terminated Wrobleski and demanded return of all copies of the Case Management System constitutes an acquisition by improper means under the statute and thus a violation of CUTSA.  Id.

(9)      COUNT IX- Dismissed by Agreement and Stipulation of the Parties.

(10)      COUNT X- CUTPA

That each activity, independently or collectively, found to factually be an unfair trade practice constitutes a violation of CUTPA.  To state a cause of action under CUTPA, a complaint must fairly allege that (1) a person, (2) engaged in unfair methods of competition and unfair or deceptive acts or practices, (3) in the conduct of any trade or commerce, (4) as a result of which another person suffered an ascertainable loss of money or property.  Cadle v. Multi Unit Servs., Inc., 2003 WL 21213434, at *5 (Conn. Super. May 12, 2003).

"[The Connecticut Supreme Court has] adopted the criteria set out in the 'cigarette rule' by the federal trade commission for determining when a practice is unfair: '(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen].'" (Emphasis added; internal quotation marks omitted).  Journal Publishing Co. v. Hartford Courant Co., 261 Conn. 673, 695-96, 804 A.2d 823 (2002). These criteria are in the disjunctive. The requirement of

substantial injury is contained in the third criteria but not in the first two. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three ..." Id. (internal quotation marks omitted).

(11)  COUNT XI- Dismissed by Agreement and Stipulation of the Parties.

(12)  COUNT XII- Intentional Misrepresentation

   That the intentional misrepresentations made by Wrobleski constitute intentional misrepresentation under Connecticut law. Fenn v. Yale Univ., 283 F. Supp. 2d 615, 632 (D. Conn. 2003) ("The essential elements of an action in common law fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury."); Parker v. Shaker Real Estate, Inc., 47 Conn. App. 489, 493 (1998) (same).

(13)  COUNT XIII- Intentional Misrepresentation

   That the intentional misrepresentations made by Wrobleski constitute intentional misrepresentation under Connecticut law. Id.

14)  COUNT XIV- Dismissed by Agreement and Stipulation of the Parties.

(15)  COUNT XV- Intentional Misrepresentation

   That the intentional misrepresentations made by Wrobleski constitute Intentional Misrepresentation under Connecticut Law. Id.

(16)  COUNT XVI- Dismissed by Agreement and Stipulation of the Parties.
(17)  COUNT XVII- Dismissed by Agreement and Stipulation of the Parties.
(18)  COUNT XVIII- Dismissed by Agreement and Stipulation of the Parties
(19)  COUNT XIX- Dismissed by Agreement and Stipulation of the Parties.

(20) COUNT XX- Dismissed by Agreement and Stipulation of the Parties.

(21) COUNT XXI- Tortious Interference with an Advantageous Business Relationship

    a) That Wrobleski's actions regarding Ling Wang constitute tortious interference with an advantageous business relationship under Connecticut Law. Heyman v. Kline, 344 F. Supp. 1110, 1115 (D. Conn. 1970), rev'd in part on other grounds, 456 F.2d 123 (2d Cir.), cert. denied, 409 U.S. 847 (1972) (employers who, as result of resignation of employees due solely to deliberate and malicious conduct of defendant, had their business affairs disrupted and incurred employment agency fees in hiring new personnel, were awarded damages for tortious interference with contractual relations); HI-HO Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 761 A.2d 1268 (2000) ("[T]he elements of a claim for tortious interference with business expectancies are: (1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss.").

    b) That Plaintiffs are entitled to punitive damages even in the absence of an award of either compensatory or nominal damages. HI-HO Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 761 A.2d 1268 (2000) ("[A]n award of compensatory damages is not necessary to establish a cause of action for tortious interference as long as there is a finding of actual loss, and a finding of actual loss may support an award of punitive damages.").

    II. DEFENDANT'S AFFIRMATIVE DEFENSE TO COUNTS XII and XIII (Statute of Limitations)

The statute of limitations on a claim based on fraud or misrepresentation is three years. Conn. Gen. Stat. § 52-577. This statute is an "occurrence" statute so that the three-year period within which a party must assert its tort claims begins to run the moment the act, injury

and/or omission complained of occurs." Fenn v. Yale Univ., 283 F. Supp. 2d 615, 636 (D. Conn. 2003). However, the limitations period must be tolled when a defendant fraudulently conceals the existence of a cause of action and/or breaches an ongoing fiduciary duty of disclosure. Id. Conn. Gen. Stat. § 52-595 provides the basis for such tolling: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

"Although the fraudulent concealment tolling statute generally requires an affirmative act of concealment beyond mere silence, non-disclosures are sufficient where . . . the defendant is under a fiduciary duty to disclose material facts." Fenn, 283 F. Supp. 2d at 636; accord Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 989 F. Supp. 110, 115-16 (D. Conn. 1997) (holding that requirement of affirmative act of concealment for purposes of tolling limitations period is not applicable when a defendant is under an affirmative fiduciary duty to disclose). Due to her personal relationship and friendship with Plaintiff John Darer, Wrobleski had an affirmative and ongoing duty to disclose the truth to Plaintiffs. This tolled the statute of limitations until Plaintiffs discovered Wrobleski's misrepresentations.

III.  DEFENDANT WROBLESKI'S COUNTERCLAIMS

(1) COUNT I- Breach of Contract

a) Wrobleski's failure to perform under the Consulting Agreement excused any claimed failure by Plaintiffs to pay her. Frank Felix Assocs., Ltd. v. Austin Drugs, Inc., 111 F.3d 284, 289 (2d Cir. 1997) (party's obligation to perform under contract is excused where other party's breach of contract is so substantial that it defeats object of parties in making contract).

b) Wrobleski's breach of the Consulting Agreement excused any claimed failure by Plaintiffs to pay her. Id.

(2) COUNT II- Breach of Implied Covenant of Good Faith and Fair Dealing

By refusing to return the work she had allegedly completed, Wrobleski deprived Plaintiffs of any benefit of the contract. Thus, she was not entitled to be paid for the purported work. Id.; see also State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 169 (2d Cir. 2004) (The covenant of good faith and fair dealing is implied in all contracts and "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.").

(3) COUNT III- Unjust Enrichment

a) A litigant who seeks equity must do equity. Overall v. Estate of Klotz, 52 F.3d 398, 404 (2d Cir. 1995). Therefore, Wrobleski's unclean hands prevent her equitable claim of unjust enrichment.

b) Unjust enrichment is a non-contractual, equitable remedy that is inapplicable if there is an enforceable contract governing the subject matter. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 60 (2d Cir. 1997).

(4) COUNT IV- Quantum Meruit

a) A litigant who seeks equity must do equity. Overall v. Estate of Klotz, 52 F.3d 398, 404 (2d Cir. 1995). Therefore, Wrobleski's unclean hands prevent her equitable claim of quantum meruit.

b) Quantum meruit is a non-contractual, equitable remedy that is inapplicable if there is an enforceable contract governing the subject matter. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 60 (2d Cir. 1997).

(5) COUNT V- Intentional Misrepresentation

"The essential elements of an action in common law fraud ... are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." Fenn v. Yale Univ., 283 F. Supp. 2d 615, 632 (D. Conn. 2003); accord Parker v. Shaker Real Estate,

12

Inc., 47 Conn. App. 489, 493 (1998). Because Wrobleski cannot establish each of these elements, her claim fails.

(6)   COUNT VI- Negligent Misrepresentation

The elements of a negligent misrepresentation claim under Connecticut law follow the Restatement (Second) of Torts: One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997). Because Wrobleski cannot establish that Plaintiffs negligently made any misrepresentations, her claim fails.

(7)   COUNT VII- Violation of Connecticut Unfair Trade Practices Act

  a)   To state a cause of action under CUTPA, a complaint must fairly allege that (1) a person, (2) engaged in unfair methods of competition and unfair or deceptive acts or practices, (3) in the conduct of any trade or commerce, (4) as a result of which another person suffered an ascertainable loss of money or property. Cadle v. Multi Unit Servs., Inc., 2003 WL 21213434, at *5 (Conn. Super. May 12, 2003). Plaintiffs did not engage in unfair methods of competition or in unfair or deceptive acts or practices, and they did not cause an ascertainable loss to Wrobleski.

  b)   "[The Connecticut Supreme Court has] adopted the criteria set out in the 'cigarette rule' by the federal trade commission for determining when a practice is unfair: '(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other

businessmen].'" (Emphasis added; internal quotation marks omitted). Journal Publishing Co. v. Hartford Courant Co., 261 Conn. 673, 695-96, 804 A.2d 823 (2002). These criteria are in the disjunctive. The requirement of substantial injury is contained in the third criteria but not in the first two. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three ..." Id. (internal quotation marks omitted). Plaintiffs' conduct does not offend public policy, was not immoral, unethical, oppressive, or unscrupulous, and did not cause substantial injury to Wrobleski.

      c)      The *Noerr-Pennington doctrine generlly immunizes* a party from liability for commencing a court proceeding. T.F.T.F. Capital Corp. v. Marcus Dairy, Inc., 312 F.3d 90, 93 (2d Cir. 2002). Litigation, including good faith litigation to protect a valid copyright, falls within the protection of the *Noerr-Pennington doctrine*. Primetime 24 Joint Venture v. National Broadcasting Company, Inc., 219 F.3d 92, 100 (2d Cir. 2000); see also Zeller v. Consolini, 59 Conn. App. 545, 551, 758 A.2d 376 (2000) (adopting the *Noerr-Pennington* doctrine in Connecticut, stating ("[A]lthough the *Noerr-Pennington* defense is most often asserted against antitrust claims, it is equally applicable to many types of claims which seek to assign liability on the basis of the defendant's exercise of its first amendment rights.").

      d)      There is an exception to the *Noerr-Pennington doctrine for "sham" litigation*. However, this exception applies only where the litigation is (1) "objectively baseless" and (2) intended to cause harm to the defendant "through the use [of] governmental process--as opposed to the outcome of that process." Primetime 24 Joint Venture, 219 F.3d at 100-01. In order to demonstrate that conduct is a sham, one must prove that it was "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., 229 F.3d 1135, 1135 (2d Cir. 2000), cert. denied, 532 U.S. 1037 (2001); see also Zeller, 59 Conn. App. at 552 (reciting two-part test defining sham litigation, stating, "Essentially, then,

14

a sham involves a [party] whose activities are not genuinely aimed at procuring favorable governmental action in any form.").

    e)  Plaintiffs instituted this litigation in good faith to protect their intellectual property through injunctive relief and to obtain monetary compensation for damages caused by Defendants' wrongful conduct. They brought suit to obtain a favorable result, not to stifle competition through the litigation itself. In other words, the litigation is a legitimate means to an end, not merely an end in and of itself. Therefore, the *Noerr-Pennington* doctrine immunizes Plaintiffs against Wrobleski's CUTPA counterclaim, and the sham exception is inapplicable. See Suburban Restoration Co. v. ACMAT Corp., 700 F.2d 98, 102 (2d Cir. 1983) (affirming District Court's order, based on *Noerr-Pennington* doctrine, dismissing complaint claiming damages resulting from defendant's filing of previous lawsuit); Zeller, 59 Conn. App. at 562 (sham exception did not apply because nothing showed that defendants' challenges to plaintiffs' zoning applications were baseless); Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 715, 746 A.2d 184, cert. denied, 252 Conn. 953 (2000) (affirming trial court's holding that "filing of a single non-sham lawsuit . . . cannot form the basis of a claim under CUTPA.").

**CUTPA – SUPPLEMENTAL BRIEF**

    A.  <u>Plaintiffs' Bringing of This Lawsuit Cannot be the Basis of a CUTPA Claim.</u>

    Plaintiffs brought this action in good faith in response to overwhelming evidence that Defendants had infringed on Plaintiffs' proprietary Case Management System and would continue to infringe unless Plaintiffs sought protection through the courts.  Prior to, and at the time they filed this action, Plaintiffs had evidence that Defendants, in particular Wrobleski, had a copy of Plaintiffs' proprietary Case Management System.  In response to repeated requests, Wrobleski failed to return the copy she had.  Instead, she asserted ownership over the Case Management System, claiming that she had created it in part. She also threatened to sell or market the Case Management System, including Plaintiffs' copyright protected code and trade secrets in her possession.  Moreover, Wrobleski asserted that former defendant Wang was developing a system similar to Plaintiffs' Case Management System.  Even more alarming, Plaintiffs had evidence that Wrobleski had shown the Case Management System to Plaintiffs' competitor, Viren Patel.

    In the face of all this, Plaintiffs needed to take action to protect their intellectual property.  The Copyright Act is specifically designed to allow copyright owners such as Plaintiffs recourse to the courts to protect their valuable intellectual property.  Bringing suit to prevent copyright infringement and to seek damages for infringement is not a violation of CUTPA; it is a statutorily authorized means of seeking redress.

    The *Noerr-Pennington doctrine generally immunizes* a party from liability for commencing a court proceeding.  <u>T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.</u>, 312 F.3d 90, 93 (2d Cir. 2002).  The *Noerr-Pennington doctrine was first established in the context of concerted petitions for anti-competitive legislation and provided protection against claims brought under the Sherman Anti-Trust Act.  However, the Noerr-Pennington doctrine has expanded significantly since its creation, and Connecticut courts have extended the scope of its protection to encompass a broad range of activity, including good faith litigation to protect* a valid copyright.  <u>Primetime 24 Joint Venture v. National Broadcasting Company, Inc.</u>, 219 F.3d 92, 100 (2d Cir. 2000); see also <u>Zeller v. Consolini</u>, 59 Conn. App. 545, 551, 758 A.2d 376 (2000) (adopting the *Noerr-Pennington* doctrine in Connecticut, stating, ("[A]lthough the *Noerr-Pennington* defense is most often asserted against antitrust claims, it is equally applicable to many types of

16

claims which seek to assign liability on the basis of the defendant's exercise of its first amendment rights.").

There is an exception to the *Noerr-Pennington doctrine for "sham" litigation. However, this exception applies only where the litigation is (1) "objectively baseless" and (2) intended to cause harm to the defendant "through the use [of] governmental* process--as opposed to the outcome of that process." Primetime 24 Joint Venture, 219 F.3d at 100-01. As to the first prong, one must prove that the behavior was "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., 229 F.3d 1135, 1135 (2d Cir. 2000); see also Zeller, 59 Conn. App. at 552 (reciting two-part test defining sham litigation, stating, "Essentially, then, a sham involves a [party] whose activities are not genuinely aimed at procuring favorable governmental action in any form.").

Wrobleski cannot establish that this lawsuit is "objectively baseless." The facts will show that Plaintiffs, based on substantial evidence that Defendants had infringed on their copyright and would do so again, brought this action to protect their copyright. The evidence will also show that there was actual infringement, computer fraud, and trade secret violations, not to mention misrepresentation and breach of contract. Thus, Wrobleski cannot fulfill the first prong of her claim that this is a "sham" litigation.

In addition, Wrobleski cannot establish that Plaintiffs brought this litigation with no hope of obtaining a favorable result and instead sought to punish Defendants through the litigation process itself. Plaintiffs instituted this action in good faith to protect their copyrights through injunctive relief and to obtain monetary compensation for damages caused by Defendants. They brought suit to obtain a favorable result, not to stifle competition through the litigation itself. In other words, the litigation is a legitimate means to an end, not merely an end in and of itself. Furthermore, this lawsuit was a last resort, as Plaintiffs made more than one attempt to procure the return of their copyrighted material prior to bringing suit, but were unsuccessful.

Wrobleski asserts that the present litigation is the fourth suit Plaintiffs have commenced since 2001 against software developers who have worked on the development of Plaintiffs' website. (Wrobleski's Proposed Findings of Fact and Conclusions of Law, at 53, ¶ 12). However, to the extent that the other lawsuits did not allege copyright infringement, they are irrelevant to any claim by Wrobleski that the present copyright infringement action is a sham. To the extent that the Sybits litigation

alleged claims for copyright infringement, it merely shows that Plaintiffs have done what the law requires in order to maintain their copyright, i.e., challenged any actual or threatened infringement of their copyright.

Wrobleski's attempt to introduce evidence of other lawsuits by Plaintiffs is simply a red herring. Those lawsuits are not probative of the merits of the present lawsuit. Ultimately, in order to succeed on her CUTPA claim, Wrobleski must establish that the present suit is a sham, that it is "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., 229 F.3d 1135, 1135 (2d Cir. 2000). This she cannot do.

Therefore, the *Noerr-Pennington* doctrine immunizes Plaintiffs against Wrobleski's CUTPA counterclaim, and the sham exception is inapplicable. See Suburban Restoration Co. v. ACMAT Corp., 700 F.2d 98, 102 (2d Cir. 1983) (affirming District Court's order, based on *Noerr-Pennington* doctrine, dismissing complaint claiming damages resulting from defendant's filing of previous lawsuit); Zeller, 59 Conn. App. at 562 (sham exception did not apply because nothing showed that defendants' challenges to plaintiffs' zoning applications were baseless); Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 715, 746 A.2d 184 (2000) (affirming trial court's holding that "filing of a single non-sham lawsuit . . . cannot form the basis of a claim under CUTPA.").

       THE PLAINTIFFS / COUNTERCLAIM
       DEFENDANTS JOHN D. DARER and
       4STRUCTURES.COM d/b/a STRUCTURED
       SETTLEMENT SERVICES

BY: _____
       MARK R. CARTA (ct 06645)
       RUCCI, BURNHAM, CARTA & EDELBERG
       30 Old Kings Highway South, P.O. Box 1107
       Darien, Connecticut 06820
       Tel.: (203) 899-3332
       Fax.: (203) 655-4302

Email: mcarta@rbce.com

Case 3:02-cv-01751-MRK     Document 70     Filed 12/30/2004     Page 19 of 20

## **CERTIFICATION**

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Amended Proposed Conclusions of Law and Supplemental Brief was sent via overnight mail this 28th day of December, 2004 to the following:

Daniel M. Young, Esq.
Wofsey, Rosen, Kweskin & Kuriansky, LLP
600 Summer Street, 7th Floor
Stamford, CT  06901

---
MARK R. CARTA (ct 06645)