UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN D. DARER, 4STRUCTURES.COM, LLC d/b/a SUMMIT SETTLEMENT SERVICES,<br><br>    Plaintiffs,<br><br>    v.<br><br>MARY WROBLESKI and LING WANG,<br><br>    Defendants. | : CASE NO. 302 CV 1751 (MRK)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: JANUARY 3, 2005 |

**DEFENDANT MARY WROBLESKI'S
BRIEF REGARDING HER CUTPA COUNTERCLAIM**

As will be proven at trial, the Plaintiffs' filing of their claims constitutes "sham litigation" that is actionable as an exception to the *Noerr-Pennington* doctrine. In addition, the Plaintiffs' pursuit of their claims, after it became even more obvious that they were baseless, constitutes abuse of process that also is actionable under CUTPA. The Defendant Mary Wrobleski's previously submitted proposed conclusions of law, Exhibit E to the parties' Joint Trial Memorandum, addresses these issues. The Defendant submits this brief in further support of her position, in response to the Court's inquiries during the Final Pretrial Conference held on December 21, 2004, and in opposition to the Plaintiffs' belatedly filed amended proposed conclusions of law.

A.   The *Noerr-Pennington* Doctrine

The *Noerr-Pennington* doctrine shields individuals from liability for petitioning a governmental entity for redress. See Zeller v. Consolini, 59 Conn. App. 545, 551 (2000). However, "its protection is not limitless." Id. "[P]etitioning activity is not protected if such activity is a mere sham or pretense to interfere with no reasonable expectation of obtaining a

favorable ruling." Id. at 552.  There is a two-part test for determining whether an action constitutes "sham litigation:"

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Second, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor ... through the use of the governmental process — as opposed to the outcome of that process – as an anticompetitive weapon."

59 Conn. App. at 552 (internal citations and quotation marks omitted) (quoting Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60-62 (1993)). "Activities found to be a sham involve actions rife with abusive intent and absent any indicia of success.  Factors present in sham litigation include, but are not limited to, the presence of repetitive litigation (although one action may constitute a sham under certain conditions) ...." Id. at 555.

In Classic Limousine v. Alliance Limousine LLC, No. CV990174911S, 2002 WL 31050919 (Conn. Super. Aug. 13, 2002), Judge D'Andrea refused to strike a CUTPA counterclaim, finding that a sham litigation that satisfies the exception to the *Noerr-Pennington* doctrine would constitute a viable CUTPA claim.  Judge D'Andrea specifically found that the allegations with respect to the plaintiff's conduct could constitute a CUTPA violation, as the plaintiff's conduct was alleged to be "oppressive and unscrupulous, because it subjects the defendants to the expense of hiring counsel to overcome the plaintiffs' dishonest, anticompetitive effort to harm and/or destroy the defendants' businesses."  See also Roncari Developmetn Co. v. GMG Enterprises, Inc., 45 Conn. Sup. 408, 432 (1997) (sham litigation is oppressive and unscrupulous because it subjects the plaintiff to hiring counsel to litigate).

With respect to Ms. Wrobleski's CUTPA counterclaim, she will prove that the Plaintiffs commenced this baseless litigation knowing full well that that neither Ms. Wrobleski nor Dr. Wang had violated their copyright rights nor that they had misappropriated any trade secrets.  To the contrary, the Plaintiffs commenced this litigation, as they have done on three prior occasions

with respect to several other potential competitors, with the goal of precluding any other software developers from working within the structured settlement industry.

The Plaintiffs filed this action hastily, despite defense counsel's request that they discuss the matter first.  See Defendant's Exhibits E, T.  At the first available opportunity, defense counsel made clear that his clients had no intention of copying the Plaintiffs' website or otherwise misappropriating any trade secrets.  See Defendant's Exhibit F, Transcript of Telepone Status Conference held on October 8, 2002, six days after the complaint was filed.  Nonetheless, the Plaintiffs persisted, with the goal and explicit intention of neutralizing software developers who dared announce a desire to develop other products for the structured settlement industry.  Indeed, having played a significant role in the dissolution of Fresh Baked Studios and Sybits simply through forcing those entities to incur significant attorneys' fees, the Plaintiffs have endeavored similarly to bankrupt Ms. Wrobleski by forcing her to incur attorney's fees.

Even when rejecting a claim that a litigation constituted a "sham" sufficient to satisfy the exception to the *Noerr-Pennington* doctrine, the Connecticut Appellate Court still explicitly noted that a party's use of its economic powers in an attempt to stifle lawful activity through the threat of expensive litigation still might constitute a violation of CUTPA.  See Zeller v. Consolini, supra, 59 Conn. App. at 562 fn 7.  Ms. Wrobleski respectfully asserts that the Plaintiffs' claims constitute baseless and objectively unreasonable "sham" litigation or other impermissible conduct that constitutes an actionable violation of CUTPA.

B.    Abuse of Process as a CUTPA Violation

 "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." Varga v. Pareles, 137 Conn. 663, 667 (1951).  "Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse

3

of process is the use of a legal process ... against another *primarily* to accomplish a purpose for which it is not designed ...." Norse Systems, Inc. v. Tingley Systems, Inc., 49 Conn. App. 582, 600 (1998). The plaintiff must "point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation." Mozzochi v. Beck, 204 Conn. 490. 497 (1987).

In TCW Realty Fund II v. Pearle Vision, Inc., No. CVH-4990HD, 1996 WL 636347 (Conn. Super. Oct. 29, 1996), the court found that an abuse of process claim could also support a viable CUTPA claim, holding that the "allegations of the count, along with necessary inferences, could support the conclusion, at a minimum, that the plaintiff persisted with the lawsuit after it knew the suit was groundless, and that no person looking at the facts could come to any other conclusion," thus supporting a CUTPA claim. Cf. New England Mortgage Group, Inc. v. Lebowitz, No. CV970160827, 2001 WL 951330 at *2 (Conn. Super. July 20, 2001) (allegation in counterclaim, that the present action was brought "for the purpose of unfairly seeking to stifle competition in the marketplace," was sufficient to state counterclaim for abuse of process).

Although a covenant not to compete might be one available option that the parties could pursue in order to settle this litigation, it is respectfully submitted that the pursuit of a baseless litigation for the purpose of coercing a party to enter into a non-compete agreement constitutes abuse of process sufficient to state a claim for violation of CUTPA.[1] Likewise, although the most common goal of civil litigation is to obtain monetary compensation for alleged damages, it

---

[1] Although the discussion or pursuit of a non-compete agreement during settlement discussions alone might be inadmissible pursuant to Rule 408, for the reasons discussed in the Defendant's previously submitted brief, it is respectfully submitted that in the instant situation, such conduct is admissible. When settlement negotiations evidence a repeated insistence that settlement only may be effectuated through the use of a non-compete agreement, such insistence suggests improper motivation that lends support to a claim for abuse of process and violation of CUTPA, because that tort requires proof that legal process has been used "in an improper manner or to accomplish a purpose for which it was not designed." Varga v. Pareles, 137 Conn. 663, 667 (1951). Clearly, none of the substantive claims advanced by the Plaintiffs nor the legal procedures employed by them was designed for the purpose of coercing a party into entering into a contractual non-compete to restrict competition.

is respectfully submitted that when litigation is pursued with the goal of financially bankrupting a party by forcing the party to incur unnecessary attorneys' fees, such conduct also constitutes anti-competitive conduct that states a claim for abuse of process and violation of CUTPA.  And, the institution of litigation for the intended purpose of discouraging Ms. Wrobleski and her former co-defendant, Dr. Wang, from pursuing their lawful right to compete with the Plaintiffs, and discouraging other parties (Viren Patel and potential customers) from cooperating with that party in such competition for fear of similar litigation, also constitutes a violation of CUTPA.

     For the reasons set forth above and in the Defendant's proposed findings of fact and conclusions of law, Defendant Mary Wrobleski respectfully submits that the Plaintiffs' conduct, that will be proven at trial, constitutes an actionable violation of CUTPA that must be punished.

                                      THE DEFENDANT,
                                      MARY WROBLESKI


                                      By_____
                                      Daniel M. Young (ct17188)
                                      WOFSEY, ROSEN, KWESKIN
                                          & KURIANSKY, LLP
                                      600 Summer Street
                                      Stamford, Connecticut 06901
                                      Telephone: (203) 327-2300
                                      Facsimile: (203) 967-9273
                                      E-mail:  dyoung@wrkk.com

**CERTIFICATION**

  This is to certify that a copy of the foregoing has been sent by overnight mail this 3rd day of January 2005 to:

Alberto Moris, Esq.
Hayden Brainard, Esq.
Rucci, Burnham, Carta & Edelberg, LLP
30 Old Kings Highway South
Darien, CT   06820

                _____
                  Daniel M. Young